IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 12 |
| MARK A. PEDERSEN, AND ) | |
| MACHELLE D. PEDERSEN, ) | |
| ) | Bankruptcy No. 17-00771 |
| Debtors. ) | |
| ) | |

**RULING ON OBJECTION TO CONFIRMATION**

This matter came before the Court for telephonic hearing on the status of objection to confirmation. Donald Molstad appeared for Debtors Mark and Machelle Pedersen ("Debtors"), Brandon Gray appeared for the Iowa Department of Revenue (the "IDR"), Carol Dunbar appeared for herself as Chapter 12 Trustee, and Martin McLaughlin appeared for the Internal Revenue Service (the "IRS"). The IRS has since withdrawn its objection. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

**STATEMENT OF THE CASE**

The only objection to confirmation remaining is by the IDR which asserts a tax claim arising from a payout Debtors received on their crop insurance policy. The question presented is whether the IDR's claim is entitled to priority treatment under 11 U.S.C. § 507 as the IDR asserts. Although tax claims are typically given priority over other unsecured claims in bankruptcy, Chapter 12 contains an

exception to this rule in 11 U.S.C. § 1232, commonly called the "priority-stripping" provision. Under this provision, a government tax claim arising "as a result of the sale, transfer, exchange, or other disposition of any property used in the debtor's farming operation—shall be treated as an unsecured claim." 11 U.S.C. § 1232. Debtors argue that § 1232 strips the IDR's claim of priority because it arose to as a result of the sale of their crops or arose as a result of the sale, transfer, or other disposition of their crop insurance policy. The Court concludes that while the IDR's claim did not arise as a result of the sale of Debtors' crops, it did arise as a result of the transfer of Debtors' crop insurance policy. The Court thus finds that the IDR's claim is not entitled to priority and that Debtors' Chapter 12 plan is therefore confirmable.

## STATEMENT OF THE FACTS

Debtors and the IDR filed a joint stipulation of undisputed facts. They also agree that the issue before the Court is purely a legal determination.

Debtors own and operate a family farm. They filed for bankruptcy under Chapter 12 in June of 2017. Debtors purchased a multi-peril crop insurance policy for the 2014 crop year. This policy protected against future revenue losses due to both decreased yields and drops in market prices. Under the policy Debtors were paid the difference between their "Guaranteed Revenue" and their "Harvested Revenue." Debtors "Guaranteed Revenue" for the 2014 crop year was $428,461.

Although Debtors actually produced more bushels of grain in 2014 than guaranteed under the policy, their "Harvested Revenue" was calculated at $361.522 due to a drop in market prices.

Debtors received a $66,939 payout under the crop insurance policy. This payout was reported in tax year 2015 and resulted in a claim by the IDR in the amount of $4,376.82. The only question before the Court is whether the IDR's claim should be treated as a priority unsecured claim under Debtors' Chapter 12 plan. The IDR argues that if its claim is entitled to priority under 11 U.S.C. § 507, Debtors' proposed plan is not confirmable as it does not provide for full payment of the IDR's claim.

## CONCLUSIONS OF LAW AND ANALYSIS

### I. Legal Background

As noted above, governmental tax claims are normally entitled to priority treatment under 11 U.S.C. § 507, unless they arise "as a result of the sale, transfer, exchange, or other disposition of any property used in the debtor's farming operation." 11 U.S.C. § 1232. Section 1232 is commonly referred to as the "priority-stripping" provision. Knudsen v. I.R.S., 581 F.3d 696, 716 (8th Cir. 2009). Section 1232(a) provides in full:

> Any unsecured claim of a governmental unit against the debtor or the estate that arises before the filing of the petition, or that arises after the filing of the petition and before the debtor's discharge under section 1228, as a result of the sale, transfer, exchange, or other disposition of any property used in the debtor's farming operation—shall be treated as an unsecured claim arising before the date on which the petition is filed; shall not be entitled to priority under section 507. . ..

11 U.S.C. § 1232.

The current version of the priority-stripping provision in § 1232 became effective on October 26, 2017. This new section replaced the previous priority striping-provision in 11 U.S.C. § 1222(a)(2)(A), which stated:

> The plan shall. . . provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507, unless-- the claim is a claim owed to a governmental unit that arises as a result of the sale, transfer, exchange, or other disposition of any farm asset used in the debtor's farming operation, in which case the claim shall be treated as an unsecured claim that is not entitled to priority under section 507, but the debt shall be treated in such manner only if the debtor receives a discharge. . ..

11 U.S.C. § 1222.

Congress had enacted the priority-stripping provision to help facilitate successful reorganizations under Chapter 12 of the Bankruptcy Code. See Hall v. United States, 566 U.S. 506, 528 (2012) (Breyer, J., dissenting). By treating tax claims as general unsecured claims, farmers could retain property necessary to continue their farming operation rather than being forced to sell it to pay off their tax liability. Id.

4

The primary impetus for Congress enacting the new priority-stripping provision in § 1232 was to resolve an issue arising under the old § 1222 provision regarding post-petition sales.  This issue had divided the courts.  The issue was whether the priority-stripping rule applied to government claims arising from the post-petition sale of farm property.  The Eight Circuit had held that priority-stripping under § 1222 **did** apply to post-petition sales.  Knudsen, 581 F.3d 696 at 710.  The Ninth Circuit had held that priority-stripping under that section **did not** apply to post-petition sales.  U.S. v. Hall, 617 F.3d 1161, 1167 (9th Cir. 2010).  The Supreme Court affirmed in Hall and adopted the Ninth Circuit view.  Hall, 566 U.S. at 523.  By enacting § 1232, which now states that priority-stripping is applicable to both pre and post-petition sales, Congress effectively overruled the Supreme Court's holding in Hall.

Besides the language related to post-petition sales, very little changed from the old priority-stripping provision in § 1222 to the new one in § 1232.  The only change potentially relevant to the issue before this Court is that the new provision applies to the "sale, transfer, exchange, or other disposition of any **property** used in the debtor's farming operation. . .." 11 U.S.C. § 1232 (emphasis added).  The old version applied to the "sale, transfer, exchange, or other disposition of any **farm asset** used in the debtor's farming operation."  11 U.S.C. § 1222 (emphasis added).

5

The Court finds that this change from "farm asset" to "property" has no effect on its analysis. Both this Court and the Eight Circuit have found that the term "farm asset" as used in the old priority-stripping provision under § 1222 was interchangeable with the term "property" as used elsewhere in the Code. In re Hemann, Bankr. No. 11-00261, 2013 WL 1385404 at * 14 (Bankr. N.D. Iowa 2013); Knudsen, 581 F.3d at 711. The change from "farm asset" to "property" only confirms that this Court's prior interpretation of "farm asset," which was quite broad, accurately reflected Congress's intent.

The changes between the old priority-stripping language in § 1222 and the new version in § 1232 have no impact on the issue before the Court. All prior case law interpreting § 1222 is equally relevant in interpreting § 1232. Importantly, the Court notes, as it has previously, that Knudsen (abrogated by the Supreme Court in Hall on the post-petition sales issue) remains controlling law on the Eighth Circuit's other holdings in that case. Hemann, 2013 WL 1385404 at *5.

## II. Applicability of § 1232 to this Case

The issue before the Court is whether the IDR's tax claim on the payout from Debtors' crop insurance policy is subject to priority-stripping under § 1232. A tax claim is subject to priority-stripping if it arose "as a result of the sale, transfer, exchange, or other disposition of any property used in the debtor's farming

6

operation." 11 U.S.C. § 1232. Courts have applied the priority-stripping provision to tax claims arising from a wide array of property dispositions. See Hall, 566 U.S. at 510 (sale of farm real estate); Knudsen 851 F.3d at 703 (sale of slaughter hogs); In re Smith, 447 B.R 435, 439 (Bankr. W.D. Pa. 2011) (sale of farm equipment and debtors' entire herd of cattle); Hemann, 2013 WL 1385404 at *17 (disposition of debtor's interest in a farm partnership). Whether § 1232 is applicable to tax claims arising from a crop insurance payout is an issue of first impression in the Eighth Circuit.[1]

The Eighth Circuit and this Court have previously broken the language "as a result of the sale, transfer, exchange, or other disposition of any property used in the debtor's farming operation" into a three-part test: (1) any property, (2) used in, (3) the debtor's farming operation. Knudsen, 581 F.3d at 711; Hemann, 2013 WL 1385404 at *14. In Knudsen and Hemann the parties agreed that the tax claim arose as a result of the sale or other disposition of the property at issue but debated whether it was "property used in the debtor's farming operation." Id. In the present case, the IDR disputes the three elements in the test laid out in Knudsen and Hemann but also disputes that its claim arose "as a result of the sale, transfer, exchange, or other disposition" of the property in question. The Court thus

---

[1] Only one other court has addressed the issue of whether priority-stripping applies to a tax claim based on a crop insurance payout. See In re Keith, Bankr. No. 10-12997, 2013 WL 3467315 (Bankr. D. Kan. 2013). This Court reaches the opposite conclusion for the reasons outlined below. See footnote 2.

7

expands the three-part test from prior cases to a five-part test to encompass the novel arguments raised by the IDR here. The elements of this five-part test are: (1) as a result of (2) the sale, transfer, exchange, or other disposition (3) of any property (4) used in (5) the debtor's farming operation.

Debtors put forward two arguments for why § 1232 priority-stripping applies to the IDR's claim. First, they argue that § 1232 is applicable because the IDR's claim arose as a result of the sale of **the crops**. Second, Debtors argue that § 1232 applies because the IDR's claim arose as a result of the "sale, transfer, exchange, or other disposition" of **the insurance policy itself**. The Court will apply the five-part test laid out above to each of these arguments.

**A. Sale of the Crops**

Debtors first argue that the IDR's claim is subject to priority-stripping because it arose as a result of the sale of crops used in their farming operation. Elements three and five of the five-part test appear to be readily met. Element three asks whether the crops are property. The Eighth Circuit held in Knudsen that "property" in the context of the priority-stripping statute is "all encompassing and broadly defined" and includes "all the property of a person available for paying debts." Knudsen, 581 F.3d at 711 (internal quotations omitted). The crops thus qualify as "property" under § 1232. On element five, there is no dispute that

Debtors were engaged in a "farming operation."  Elements three and five are satisfied.

Element four, the "used in" requirement of the priority-stripping test, has previously been a point of contention among the circuits.  In Knudsen, the debtors sold various farm equipment, breeding sows, and slaughter hogs.  Id. at 710.  The debtors claimed the taxes arising from all these sales were subject to priority-stripping.  Id.  The government conceded that the farm equipment and breeding sows were "used in" the debtors' farming operation but argued that the slaughter hogs were not.  Id.  The government argued that the slaughter hogs were the product of the farming operation, the end result, not property "used in" the farming operation.  Id.

The dissent in Knudsen sided with the government on this point.  Knudsen, 581 F.3d at 721 (Colloton, J., dissenting).  At least one bankruptcy court outside the Eighth Circuit also found this reasoning persuasive.  In re Keith, Bankr. No. 10-12997, 2013 WL 3467315 at *6–8 (Bankr. D. Kan. 2013) (finding that taxes arising from the sale of crops and feeder cattle were not subject to priority-stripping).  The majority in Knudsen, however, sided with the debtors and held that farm products are "used in" the farming operation.  Knudsen, 581 F.3d at 714.  The Court finds this reasoning would apply here to the extent the tax arose from the

sale of the crops. Thus, the Court finds that the crops in this case were "used in" Debtors' farming operation. The fourth element is satisfied.

The IDR argues that that the second element, that the claim arise as a result of "the sale, transfer, exchange, or other disposition" is not met because the stipulated facts do not contain evidence about the sale of Debtors' crops. While the record does not include direct evidence about Debtors' crop sale, the fact that the crops were sold is implied in the facts and arguments. A portion of the IDR's total claim in this case is for taxes arising from the sale of those crops. It is apparent to the Court that the crops were sold, even though the record does not contain direct evidence of the sale. The Court finds that the second element, that there was a "sale, transfer, exchange, or other disposition," is established here.

This leaves only the first element–whether the IDR's tax claim arose "as a result of" the sale of the crops. The IDR argues that since Debtors were not required to sell their crops to receive a payout under their crop insurance policy, the payout, and accompanying tax on it, did not arise "as a result of" the sale of Debtors' crops.

No court has previously defined the phrase "as a result of" in § 1232. The phrase is also not defined anywhere else in the Code. Black's Law Dictionary defines "result" as "[a] consequence, effect, or conclusion." Black's Law

Dictionary (10th ed. 2014).  The phrase is so common as to almost defy definition. At a basic level if event B happens "as a result of" event A, then there is some causal connection between event A and event B.  This Court adopts this "some causal connection" test as the method for determining whether the IDR's claim arose "as a result" of the crop sale.  In short, there must be a causal chain linking the crop sale to the tax claim.

The IDR does not dispute that there is a causal link between the crop insurance payout and its claim.  The tax liability clearly arose as a result of the insurance payout.  The IDR argues that there is not, however, a causal link between the crop sale and the insurance payout.  The IDR admits that the corps and the insurance policy are related but argues there is no causal connection between the crop sale and the insurance payout.  The IDR basis this argument on the terms of the crop insurance policy.

Under Debtors' crop insurance policy, like all crop insurance policies of this type, the amount of the payout is calculated by taking the "Guaranteed Revenue" and subtracting the "Harvested Revenue." The "Guaranteed Revenue" is set at the time the policy is purchased.  The "Guaranteed Revenue" is calculated by taking the projected number of bushels to be harvested, based on production data from previous years, and multiplying it by the projected market price.  The "Harvested Revenue" is calculated by multiplying the actual number of bushels harvested by

the "market price," which is an average based on the price of crop futures at the time of harvest.

The crux of the IDR's argument is that to calculate the payout the insurance company needed to know only the number of bushels Debtors harvested, not the actual revenue Debtors received from the sale of those crops. The IDR reasons that, since the crop insurance payout is not calculated based on the actual sale of the crops, the payout did not arise "as a result of" the crop sale. The IDR asserts, for example, that had Debtors' entire crop been destroyed or had they harvested the crops but stored them rather than selling them right away, the insurance company was still required to issue a payout under the policy. The IDR argues that the crop insurance payout did not arise "as a result" of the sale of the crops, because the payout would have occurred even if there had been no crop sale.

The Court finds the IDR's reasoning persuasive. There is a causal connection between Debtors **planting** the crops and the insurance payout. There is also a causal connection between Debtors **harvesting** the crops and the insurance payout. But there is no causal connection between Debtors **selling** the crops and the insurance payout. As such, the IDR's tax claim on the insurance payout did not arise "as a result of" the sale of Debtors' crops. The first element is not met under this theory. Debtors' first argument, therefore, fails.

### B. Transfer of the Insurance Policy

Debtors' second argument is that the IDR's claim arose "as a result of the sale, transfer, exchange, or other disposition" of the insurance policy itself. The Court will again apply the five-factor test: (1) as a result of (2) the sale, transfer, exchange, or other disposition (3) of any property (4) used in (5) the debtor's farming operation.

Only a couple elements of this test are in dispute. There is no real dispute that the insurance policy was "property," that Debtors were engaged in a "farming operation," or that the IDR's claim arose "as a result of" the insurance payout. Thus, elements one, three, and five are met.

Element four, the "used in" requirement, has previously generated dispute among courts. Farm equipment such as tractors, grain carts, and combines are clearly "used in" a farming operation because the directly aid the farmer in producing and harvesting their crops. The dissenting judge in <u>Knudsen</u> reasoned that the "used in" requirement should be construed narrowly to include only this type of tangible farm property. <u>Knudsen</u>, 581 F.3d at 721 (Colloton, J. dissenting).[2] The majority in <u>Knudsen</u>, however, adopted a broader interpretation

---

[2] The Court notes that the only prior case to address whether priority-stripping applies to tax claims based on crop insurance payouts followed Judge Colloton's reasoning on the "used in" requirement. See <u>In re Keith</u>, Bankr. No. 10-12997, 2013 WL 3467315 at *7 (Bankr. D. Kan. 2013). The <u>Keith</u> court acknowledged that, like crops, crop insurance was a "farm asset," but found that neither crops nor crop insurance were "used in" the farming operation. <u>Id.</u> at *6–9. The court found that the debtors thus did not satisfy the fourth element in the priority-stripping test. <u>Id.</u>

13

of "used in," finding that the end products of a farming operation, such as crops and livestock, are also "used in" a debtor's farming operation. Knudsen, 581 F.3d at 714. This Court has previously found that even intangible property such as an interest in a farm partnership can be "used in" a farming operation. Hemann, 2013 WL 1385404 at * 16.

This Court again adopts a broad reading of the "used in" requirement. Although a crop insurance policy is not a tangible asset physically utilized in the process of growing crops in the same way as a tractor or combine, it is nonetheless "used in" a farming operation. Crop insurance is an important tool in protecting farmers from natural disaster and market instability. This Court finds that Debtors' crop insurance policy was "used in" their farming operation in the same way the slaughter hogs were in Knudsen and an interest in a farm partnership was in Hemann. The fourth element is satisfied.

This leaves only the second element of the § 1232 priority-stripping test, that the claim resulted from a "sale, transfer, exchange, or other disposition" of Debtors' crop insurance policy. The IDR argues that, while Debtors had a property interest in the crop insurance policy, the payout under that policy was not a "sale, transfer, exchange, or other disposition" of that property interest.

---

The Keith court specifically rejected the Eighth Circuit majority's ruling in Knudsen on this issue. Id. at *7. This Court chooses to follow Knudsen and therefore declines to follow the Kansas Bankruptcy Court's decision in Keith.

No case or specific language of the Code addresses this issue. Thus, the Court looks to the general definitions in the Code for guidance. The Code does not define "sale," "exchange," or "disposition" but it does define "transfer."

> The term "transfer" means–
>
> (A) the creation of a lien;
>
> (B) the retention of title as a security interest;
>
> (C) the foreclosure of a debtor's equity of redemption; or
>
> (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with–
>
> (i) property; or
>
> (ii) an interest in property.

11 U.S.C. § 101. The Code's definition of "transfer" is quite broad. The fact that Congress chose to use this broad term in addition to "sale" "exchange" and "other disposition" indicates that Congress intended § 1232 to encompass a wide swath of transactions. See Util. Air Regulatory Grp. v. E.P.A., 573 U.S. 302, 134 S.Ct. 2427, 2454 (2014) ("the broad language of the Act-wide definition. . . reflects an intentional effort to confer. . . flexibility") (internal quotations omitted).

Unlike other forms of casualty insurance where a payment can be triggered at any time, crop insurance covers only one event–harvest of the insured crops. Once the crops are harvested and a payout either is or is not triggered, the policy ceases to be effective. The farmer must buy a new crop insurance policy to cover

15

next year's crops. There are only two ways the farmer can get value out of their property interest in their crop insurance policy: (1) harvest their crops and accept any payout that is triggered under the policy, or (2) transfer their right to receive payment under the policy to another for value. Farmers may transfer their right to receive payment under their crop insurance policy to another person, usually a creditor, any time prior to accepting a payout. See USDA General Standards Handbook 2017, FCIC Directive No. 18190 at § 852. A transfer of rights to payment does require prior-approval by the insurance provider. Id.

Transferring rights to payment is clearly a "transfer" under the definition provided in 11 U.S.C. § 101. If the farmer choses the other route and accepts the payout, it follows logically that this too should be considered a "transfer." Once the farmer accepts a payout, the policy ceases to be effective, there is no possible way to get any additional value out of it. By accepting a payout under the policy, the farmer has "part[ed] with. . . an interest in property." 11 U.S.C. § 101. Since accepting a payout under a crop insurance policy is a "transfer" as defined in § 101, the second element of the five-part test is satisfied in this case.

The Court finds that by accepting a payout under their crop insurance policy, Debtors transferred their property rights in the policy under the broad definition of "transfer" provided in 11 U.S.C. § 101. As such, the IDR's tax claim arose as a

16

result of a transfer of property used in Debtors' farming operation. The Court finds that the priority-stripping provision of 11 U.S.C. § 1232 applies to the IDR's claim.

The Court believes this result is consistent with the intent of Congress. Congress enacted the propriety-stripping provision to ensure that tax liabilities associated with selling farm property did not undermine successful family farm reorganizations under Chapter 12. Hall, 566 U.S. at 528 (Breyer, J., dissenting) (quoting 145 Cong. Rec. 1113 (1999)). In Hall Justice Breyer quoted the provision's chief legislative sponsor, Senator Charles Grassley, in his speech to the Senate:

> Under current law, farmers often face a crushing tax liability if they need to sell livestock or land in order to reorganize their business affairs. . .. [H]igh taxes have caused farmers to lose their farms. Under the bankruptcy code, the I.R.S. must be paid in full for any tax liabilities generated during a bankruptcy reorganization. If the farmer can't pay the I.R.S. in full, then he can't keep his farm. This isn't sound policy. Why should the I.R.S. be allowed to veto a farmer's reorganization plan? [The Amendment] takes this power away from the I.R.S. by reducing the priority of taxes during proceedings. This will free up capital for investment in the farm, and help farmers stay in the business of farming.

Id.

The Eighth Circuit established in Kundsen that the priority-stripping provision applies to crops, livestock, and other products that are the end result of a farming operation. Knudsen, 581 F.3d at 714. Crop insurance is meant to make up for losses on the sale of crops due to natural disaster or market price declines.

Extending priority-stripping to claims arising from a crop insurance payout is a completely logical step and consistent with Congressional intent.

## CONCLUSION

**WHEREFORE**, the Iowa Department of Revenue's Objection to Confirmation of Chapter 12 Plan is OVERRULED.

**FURTHER**, Debtors' Chapter 12 Plan of Reorganization is CONFIRMED.

Dated and Entered: December 18, 2018

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE